E-FILED
Friday, 22 June, 2007  01:59:17 PM
Clerk, U.S. District Court, ILCD

IN THE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA, ILLINOIS


| | |
|---|---|
| United States of America ex rel. ) | |
| CLEVE HEIDELBERG, Jr., ) | |
| ) | |
| Petitioner Pro Se, ) | Case #: |
| ) | |
| VS. ) | |
| ) | |
| JOHN CHAMBERS, Warden, ) | |
| ) | |
| Respondent. ) | |

**FILED**

JUN 22 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

State of Illinois   )§
County of Vermilion )


<u>PETITIONER'S SUPPORTING HABEAS CORPUS</u>

<u>BRIEF and ARGUMENT</u>


<u>Respectfully submitted</u>

<u>by</u>:

MR. CLEVE HEIDELBERG, Jr.,
Petitioner Pro Se

## Index

Pages:

Statement of Claim      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Overview on the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-4

Determining Minimum Sentence Term . . . . . . . . . . . . . . . . . . . . . . .4-6

ARGUMENT ON THE ISSUES

Point I.:  Fundamental Base of Ex Post Facto Claim   . . . . . . . . .6-12

Point II.:  Determination of Early Release Eligibility   . . . . .13-14

Point III.:  Unconstitutional Use of Arbitrary and Vindictive
            Legislative Power   . . . . . . . . . . . . . . . . . . . . . . . . . .15-16

CONCLUSION:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

EXTRAORDINARY RELIEF REQUESTED:  . . . . . . . . . . . . . . . . . . . . . . .18-19

END

## CLAIM PRESENTED FOR
## HABEAS CORPUS RELIEF

ADJUDICATION MADE BY ILLINOIS SUPREME COURT THAT STATUTE 3-3-2.1 (b) DID NOT VIOLATE PETITIONER'S CONSTITUTIONAL RIGHT TO BE FREE FROM HAVING EX POST FACTO LAW IMPOSED ON HIM; RESULTED IN A DECISION THAT WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICA- TION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN <u>WEAVER V. GRAHAM</u>, 101 S.CT. 960.

### OVERVIEW

The challenged penal statute violated the Ex Post Facto Clause of the Constitution.  It retrospectively increased the statutorily mandated minimum sentence term and caused petitioner's punishment to be more onerous.  It was used to deny petitioner his early release fixed release date and denied him the opportunity to earn an early final discharge from his sentence.  Thereby, the ex post facto statute unconstitutionally increased the quantum of his punishment and grieviously disadvantaged petitioner.

The Illinois Supreme Court's opinion that the ex post facto statute was not unconstitutionally imposed on petitioner is plainly erroneous.  Where the claim was fully supported by relevant facts and controlling law established by the U.S. Supreme Court, the lower court should have granted petitioner the habeas corpus relief due to him.  (<u>EXHIBIT # 6</u>, Appellate Court Opinion).

(Page 1)

The ex post facto claim presented in this action seeks relief not only for petitioner but additionally the justice due for the hundreds of other men & women incarcerated in the Illinois Department of Corrections; who are likewise situated and have also suffered the same violation of their constitutional rights. The basic facts concerning petitioner and this certain group of prisoners, the "C-Numbers", is their continuous imprisonment for over 30, 35 and more years. The span of their ages range from youthful 49 year olds to geriatric 70 and 80 years old individuals. They are fathers; mothers, grandparents, sons and daughters.

Further, due to their average health conditions and their elderly ages, none represent any serious endangerment if they are rightfully released from the prisons. The majority of the "C-Numbers" have been effectively detoured & rehabilitated from the criminal acts and behavior they were about 30, 35 or so years ago. Many have earned college degrees and special awards. Most have maintained good to excellent work & disciplinary records while in prison. Thus, they have merited enough good time years ago to qualify them for early release eligibility.

"C-Number" prisoners have been petitioning the State government; the courts and the public for justice, fundamental fairness and their earned fixed release outdates from prison custody since February 1978. Nevertheless, they have been wrongly; unreasonably and arbitrarily kept in prison these last 29 years in violation of the Ex Post Facto Prohibition of our Constitution.

The "C-Number" prisoners were neither sentenced to "Death" nor to serve "Life" terms in the prison system; yet, due to the denial of their fixed release outdates, those are the realities being forced on them. And, not only have they spent much longer periods of time in prison custody due to denial of their fixed release outdates, they are suffering the "Death" & "Life" detrimental consequences as a result of the violation of their constitutional rights. (The annual parole release rate for the "C-Number" group is less than 1% but their yearly attrition rate is much greater than that.).

(Page 2)

The situation of the "C-Number" group and the cause of petitioner's ex post facto claim began in February 1978.  This was when the State legislature enacted a specially amended penal statute onto the Determinate Sentencing Act; and then used such amended statute to exclude the "C-Number" group from the benefit of their fixed release outdates.  In that, the new sentencing Act was enacted to retrospectively apply to all prisoners serving sentences under the old sentencing law.  It provided for the converting of old law sentences to more reasonable "flat" terms of imprisonment by giving each such prisoner a fixed release outdate from prison.  However, as fully presented in this instant petition, some legislators, acting with vindictiveness and dislike of certain prisoners, were able to get the Determinate Sentencing Act to be restrictively amended.  Thus, such legislators and their amendment excluded a certain class of prisoners, who had been imprisoned for committing particularly highly publicized & sensational-type of crimes -- whom they expressed as being the worst "bad people" in the prisons, from getting the benefit of the early release fixed release outdate....a fixed release outdate given to all other prisoners held in the Department at that time.

The Amendment was hurriedly put together as a compromise deal so that the Determinate Sentencing Act could be timely passed into law.  Thereby, an arbitrary and the very inaccurate concept of prisoners sentenced to indeterminate minimums of "20 or more years" was created to cause the "C-Numbers" to be excluded from receiving their fixed release outdates.  The use and application of that erroneous conception ignored the actual "20 years less time credit for good behavior" that had been annexed by law as their effective minimum sentence terms.  And, it omitted crediting such prisoners with the good time they had accumulated.  Credits, that had reduced their minimum sentence terms to be actually far less than the 20 years eligibility cutoff for the fixed release outdate mandated in the Amended statute, that had qualified them for the outdates at time Amendment had been enacted.

Although this petition is not per se a "Class Action", petitioner is likewise situated as the all other "C-Number" prisoners who

(Page 3)

have had their constitutional right to be free from the disadvantaging effects of the amended ex post facto statute violated.    Thus, petitioner's Question (Claim) is one of importance to the "C-Number" prisoners and this Court's findings; determination and rulings on its issues will effect them....as much as they have been made to suffer from the unlawful imposition of the ex post facto penal statute on them.

So, Whether the retrospective state penal statute violated petitioner's constitutional right to be free from the application of a disadvantaging ex post facto law?, is a serious Federal Question that is worthy of consideration; and, an answer, as a matter of justice for all so-called "C-Number" prisoners.

The extraordinary habeas corpus relief requested by petitioner is fully justified by the determinations and rulings this Honorable Court is asked to make on the presented claim.

RE:    <u>The nature & extent of petitioner's minimum sentence</u> <u>term</u>.    The central issue regarding this case is -- Whether or not the nature & extent of petitioner's indeterminate minimum term sentence was set by the law?    The respondent has made the decision that his minimum sentence term is only what the trial court orally pronounced on him.    Petitioner maintains that his effective minimum sentence term; its exact nature & its extent are set in & by the law, as annexed to his crime at the time of its occurence.

The resolution of this issue by the Court is essentially necessary.    It is material and relevant to, if not conclusive of the merits of the presented claim.    Therefore, petitioner begs indulgence for his layperson's presentation & analysis of the important legal principles he puts before this Court in support of his claim.    So, especially, he asks the Court to observe the legal truths that determine the issues in the case and the merits of his claim; regardless of his status as being untrained in the law.

(Page 4)

It is true in a collateral sense, that on August 24, 1976
the trial court imposed concurrent sentences of 4 2/3-14 years and
99-175 years on petitioner.  Such sentences were given for the
crimes of Attempt and Murder which occurred on May 26, 1970.
Nevertheless, it is equally but foremost true that his indeterminate
minimum sentence was set to a term of "20 years less time credit
for good behavior", as a matter of law.  Ill.Rev.Stat., ch. 38 §
1003-3-3(a)(1).  And, where his sentences were ordered to run
concurrently with each other, the practical fact that petitioner
is serving an effective & controlling indeterminate sentence with
a minimum term; 4 2/3 years and a maximum term of 175 years, is
also true.  (SCR, Sentencing Order, Exhibit # 1A, attached hereto).

The oral pronouncement of sentence by the trial court on
petitioner, without consideration of anything else, permits two
different interpretations of the indeterminate sentence he is
serving.  Under the pronouncement of the trial court he is serving
an indeterminate sentence of 4 2/3 - 175 for his crimes.  Or, as
apparently interpreted by the State respondent in this case, that
petitioner is serving (in disregards to his sentence for Attempt)
a 99-175 years sentence.  On the other hand, under the interpretation
of penal statutes, petitioner maintains he is either serving an
indeterminate 4 2/3 - 175 years sentence as a practical legal
fact; or, (in disregards to his sentence for Attempt) he is serving
a "20 years less time credit for good behavior" - 175 years sentence.
§ 1003-3-3(a)(1).

Admittedly petitioner's "exact or most correct sentence" is
debatable, especially so in regards to his minimum sentence term.
However, what the law mandates as his effective indeterminate
minimum sentence term is not ambiguous.  Thus, whether his minimum
term is specifically labelled or is directly referred to as such,
the relevant statute provides that petitioner's indeterminate
minimum sentence term is "20 years less time credit for good
behavior".  That is foremost his minimum sentence term because
Statute § 3-3-3(a)(1) mandates it and that supercedes the oral
pronouncement of a sentence given by the trial court.

(Page 5)

The "20 years less time credit for good behavior" was actually
annexed to petitioner's crimes at the time they were committed as
his minimum sentence term.  It dictated his eligibility for parole
or for early release from prison, when he could be legally paroled
or early release from prison.  Illinois' courts have held:  That
in view of the statutorily prescribed minimum sentence terms
applicable on offenders, under the parole & sentencing statutes
effective at the time of their sentencing, that oral pronouncements
of sentence by the trial courts, with respect to their minimum
sentence terms, were of no legal effect.  (See:  <u>People v. Henderson</u>,
4 Ill.Dec. 76; <u>People v. Doom</u>, 6 Ill.Dec. 775, at 778.

## PETITIONER'S ARGUMENT ON THE ISSUES

[Point I.] <u>THE FUNDAMENTAL BASE OF PETITIONER'S EX POST FACTO</u>
<u>CLAIM</u>:  Is founded on the legal fact that his statutorily mandated
minimum sentence term is "20 years less time credit for good
behavior".  Simply stated, that was the minimum sentence term set
by law and it was annexed to his crimes at the time they were
committed and to the oral pronouncement of sentence by the trial
court.  Thus, as forbidden by the Ex Post Facto Clause of our
Constitution, that mandated minimum sentence term should have been
neither changed; reinterpreted, altered <u>nor</u> ignored by any succeeding
penal statute.  Especially, such "change etc" should not have been
used by any such new penal statute to eliminate petitioner's
eligibility for early release from prison custody.

The new penal statute that caused petitioner's constitutional
right to be free from having an ex post facto statute imposed on
him to be violated was enacted by the State legislature on February
1, 1978.  It mandated, that:  "No fixed release date * * * shall
be set for any person sentenced to an indeterminate sentence under
the law in effect prior to the effective date of this Amendatory
Act of 1977 in which the minimum term of such sentence is 20 years
or more."  (<u>730 ILCS, 5/3-3-2.1 (b)</u>); (<u>Exhibit # 3</u>, attached
hereto).

On the date of petitioner's first parole hearing in 1981, he
requested the Prisoner Review Board to set an early release fixed

release outdate from prison custody for him.  He represented to the Board that he was due to be provided a fixed release outdate from prison custody because he was sentenced under the old law and the Determinate Sentencing Act, as originally enacted, mandated that benefit for him.  (See:  730 ILCS, 5/3-3-2.1 (a)); (See Also: Exhibit # 3).  The Prisoner Review Board denied his request.

In justification of its action; the Board indicated that petitioner was not eligible to get the benefit of an early release fixed release outdate because the trial court imposed an indeterminate minimum sentence term of "20 years or more" on him.  And, it stated, the amended statute excluded the setting of a fixed release date, citing § 3-3-2.1. (b).  Thereafter, petitioner was likewise denied a fixed release date at each of his parole hearings since 1981.

In the lower courts, the State respondent took the same position adopted and used by the Board to deny petitioner his early release fixed release date.  In that, he also considered that only the oral pronouncement of sentence by the trial court was effective as his minimum sentence term.  Thus, respondent represented, that where petitioner was sentenced to a 99-175 years' indeterminate sentence by the trial court, he was serving an indeterminate minimum sentence term of "20 years or more" and was ineligible to get the fixed release date.

Such position taken by respondent is erroneous.  Clearly, the relevant statute provides that, where the oral pronouncement of sentence on petitioner involved a much larger indeterminate minimum sentence term than "20 years less time credit for good behavior"; such oral pronouncement of sentence (in respect to the indeterminate minimum term) was of no legal authority or consequence. Therefore, the State respondent's reliance on that oral pronouncement to deny petitioner a fixed release date was not right.

The implication that petitioner is serving an indeterminate minimum sentence term of "20 years or more" and the ex post

facto application of 3-3-2.1.(b) on petitioner clearly present a
serious question under . Ex Post Facto Clause of the Constitution.
U.S.C.A. ccl. 3, Const.Art I, §9; Warden v. Marrero, supra at
2538; WEAVER, supra.  And, due to the fact, that petitioner has
suffered the disadvantage of being denied an early release fixed
release date and denied an early final discharge from his sentence,
under the unlawlful operation of 3-3-2.1(b) on him; his constitu-
tional rights have been violated.

     Similarly, a pragmatic view of the sentencing process requires
the finding that petitioner's eligibility for parole or early
release, under 3-3-3 (a)(1), was actually determined at the time
of his sentencing.  Since, under 3-3-3 (a)(1) an offender became
eligible for parole or early release after serving "20 years less
time credit for good behavior"; they were functions of the length
of the sentence fixed by law.  So, the precise time when petitioner
would become eligible either for parole or early release was a
part of the sentence, as annexed as a matter of law.  Therefore,
any post-sentencing penal statute that causes his eligibility for
parole  or early release from prison to be changed, increased or
eliminated runs afoul of the ex post facto proscription.  Shepard
v. Taylor, 556 F.2d 648, 654 (2nd Cir.1977); Warden v. Marrero, 94
S.Ct. 2532, 2538.

     By definition, the ex post facto statute change of petitioner's
statutorily mandated minimum sentence term from "20 years less
time credit for good behavior" to that of "20 or more" years"
increased the period that someone in his position must spend in
prison.  Therefore, the new statute is plainly to petitioner's
substantial disadvantage where it eliminated his early release
opportunity that would have given him freedom from custody and
control prior to the expiration of his maximum sentence.  The
United States Supreme Court ruled on a similiar "new statute" that
materially altered the situation of an accused to his disadvantage.
It found and ruled an ex post facto violation had happened when a
statute was applied to deny gain time to an inmate whose crime
occurred before the statute's enactment.  The inmate was set back

the court indicated, by that statute's new restrictions on eligibility for early release.  (See:  <u>Greenfield v. Scafati</u>, 88 S.Ct. 1409.

Beyond any speculation, it can be plainly & clearly observed that 730 ILCS, § 5/3-3-2.1 (b) constitutes an ex post facto law due to the fact that the law annexed to petitioner's crimes guaranteed his eligibility for early release.  That law, Ill.Rev.Stat., ch. 38 § 1003-3-3 (a)(1)(1973), provided that offenders sentenced under the Indeterminate Sentencing Act shall be eligible for parole or release from prison custody when he had served "the minimum term of an indeterminate sentence less time credit for good behavior, <u>or</u> 20 years less time credit for good behavior, <u>whichever is less...."</u>.  Therefore, in 1970, petitioner and other Illinois criminals understood that, except for certain proscribed offenders, the sentence imposed on them by a trial court judge would be automatically reduced by their good behavior while in prison.  Particularly, with respect to petitioner's effective indeterminate minimum sentence term, the law provided & guaranteed he had only to serve a minimum term of "20 years less time credit for good behavior" to earn his eligibility for reduced imprisonment. Thus, such automatic credit for good behavior was the law annexed to his alleged crime when he committed it as a matter of law.  <u>3-3-3 (a)(1)</u> (Emphasis added); (See also:  <u>SCR</u>, HC Petition, Exhibit # 2A, attached thereto for full text of statute).  There existed various important penological & constitutional reasons for this guarantee that a prisoner's good behavior would allow him eligibility to earn a shorter period of time in prison, under the sentence imposed on him, than he would have to serve absent such good behavior.  <u>Weaver v. Graham</u>, 101 S.Ct. 960, 964-966.

Clarifying    and    establishing the controlling Ex Post Facto Prohibition law; in <u>WEAVER V. GRAHAM</u>, the U.S. Supreme Court construed that the term "punishment" mean the actual time that a prisoner spends in prison and it found that where a prisoner's "quantum of punishment" is increased the consequence associated

with his crime is thereby made more onerous in violation of the Ex
Post Facto Prohibition.

Thus, in WEAVER supra, the Supreme Court invalidated a statute,
highly similar to that in question in the instant case, which
reduced early release "gain-time" credit earned by Florida prisoner
for avoiding disciplinary infractions and performing assigned
tasks.  The Court held that the ex post facto statute questioned
in that case reduced the prisoner's eligibility to earn early
release "gain time" and thereby did extend his required time in
prison by a number of years.  Such legislation, the Court explained,
could not be applied retrospectively because the new penal statute
changed the "quantum of punishment" for prisoners who committed
crimes before its enactment and it was unfavorable to them.  See:
Weaver v. Graham, (1981), 101 S.Ct. 960.

Stong points of similarity can be judicially noted by the
application of the constitutional principles & law decided in
WEAVER to an analysis of the ex post facto claim presented in this
instant petition.  Both questioned ex post facto statutes involved:
(1)  A prior penal statute which had annexed thereto a guarantee
of early release eligibility for reduced imprisonment.  However,
in the instant case, the statute's annexed guarantee implicitly
provided a "20 years less time credit for good behavior" statutorily
mandated indeterminate minimum sentence term for petitioner to
serve to be eligible for  early  release opportunities which
became available to him.; (2)  Neither of such prior penal statutes
gave any warning that its annexed guarantee could or would be, in
its future, arbitrarily changed or eliminated in any respect.
Especially, the applicable annexed guarantee pertaining to petitioner,
penal provision 3-3-3 (a)(1), gave no warning or notice that his
minimum sentence term of "20 years less time credit for good
behavior" could or would be changed or eliminated or increased
by a possible future penal statute.  And, certainly, the intervening
new penal statutes in both cases were retrospectively applied.
Under 3-3-2.1 (b), the new statute was applied so as to cause his
statutorily mandated minimum sentence term to be re-considered or

(Page 10)

reinterpreted from the effective "20 years less good time" to "20 or more years" without good time credit.

Further, (3), both statutes operated to work "detrimental effects" on the petitioners.  The new statutes caused their "quantum of punishment" (time spent in prison) to be increased. In the instant case, the quantum of petitioner's punishment was made to be more onerous by the approximately 24-26 years additional time  he has been required to spend in prison....as a direct result of the questioned ex post facto statute on him.*  And, petitioner was disadvantaged when his right to have his earned good time to be credited to reduce his imprisonment was ignored by the new statute; and, he was disadvantaged when  the annexed guarantee for his early release eligibility was eliminated  -- causing petitioner to be denied an early release fixed release date and an early final discharge from his sentence.  (See Also* below).

Lastly, as the Court ruled in <u>WEAVER</u>, that "it is the effect, not form, of the law that determines whether it is ex post facto". (<u>WEAVER</u>, supra at 965-966).  Thus, the same critical question used by the Supreme Court to determine the ex post facto violation in <u>WEAVER</u> can be used as a testing tool to find the ex post facto violation in this instant case.  <u>Whether law changes the legal consequences of acts completed before its effective date?</u> is the critical question.  In the context of petitioner's case, this question can be recast as asking whether Illinois Statute 3-3-2.1 (b) applies to prisoners convicted for acts committed before the provision's effective date.  Clearly, the answer is in the affirmative.

*The facts on which petitioner's ex post facto claim is based were uncontested by the State in the circuit and the reviewing courts. They alledged & indicated that those prisoners who were granted their early early release fixed release dates received a determinate sentence.  That such new sentences were more lenient than those imposed under the old law.  In fact, that they were mandated to be "reasonable" sentences.  And, further, that they were all intended and directed to be set to remedy & to ameliorate the disproportionate (Continued Next Page)

The respondent admitted and conceded in the lower courts that
provision 3-3-2.1(b), which was implemented on February 1, 1978,
was used to determine & deny petitioner an early release fixed
release date.  That the early release fixed release date eligibility
limiter of "20 or more" was used to deny him a fixed release date.
That that was done because it was considered that petitioner was
one of those prisoners who was sentenced to a minimum term of "20
or more" years by the court under the old sentencing law, as the
statute (3-3-2.1 (b)) directed.  Therefore, where the actual
"effect" of the new statute was retrospective and it attached
legal consequences to a crime committed before the law took effect;
as the Supreme Court held in <u>WEAVER</u>, this court can declare the ex
post facto violation petitioner has put before its attention to be
what it is.

_____

*(continued)

& draconnian-type of sentences previously imposed under the old
sentencing act.  Thus, that all of those determinate sentences
were set by the Prisoner Review Board to be many years lower than
the typical maximum sentence or the maximum extended term sentence
under both the old or the new sentencing codes.  And, that for the
thousands of prisoners, who were sentenced under the old law, but
were granted their early release fixed release date under the new
sentencing act received the benefit of being released from prison
custody within six months to one year.

Thereafter, such prisoners were granted an early final discharge
from their new determinate sentences after successful service of a
required three year term of Mandatory Supervised Release.

That petitioner would have been early released from prison custody
possibly in November 1980-1981....if not for the new provision of
penal law that denied him an early release fixed release date.

That in 1980, during his parole hearing, petitioner requested for
the Prisoner Review Board to set an early release fixed release
date for him.  That request and each such request he has made over
the years were denied.  (See:  <u>SCR</u>, Petitioner's HC Petition,
Exhibit #1, Page 7 therein);  (See Also:  <u>SCR</u>, Petitioner's Supporting
Brief on Appeal in State Court -- not included in present record.)

[Point II.]  THE NATURE OF HIS CONCURRENT SENTENCE AND HIS
EARNED GOOD TIME DETERMINED EARLY RELEASE ELIGIBILITY:  Where
petitioner's concurrent sentence and the "good time" he had earned
were neither recognized nor credited to qualify him for an early
release fixed release outdate; the application of the amended
penal statute on him violated Ex Post Facto Prohibition ban and
his constitutional rights.

Beyond any other finding, Illinois' law prescribes petitioner's
concurrent sentence of 4 2/3 - 175 years to be his "sentence".
That is true as both a practical and as a legal fact.  It is
defined by the 4 2/3 years as the minimum term of his indeterminate
sentence; and, by the 175 years term as his maximum term of his
imprisonment.  The relevant Illinois statutes' clearly hold that
when an offender is committed under several convictions, with
sentences that are ordered to run concurrently, such sentences are
to be construed as one effective "concurrent sentence", having
only one minimum term and one maximum term.  Thus, it is the most
minimum term of petitioner's indeterminate sentence that determines
his eligibility for either parole or early release from prison.
(See:  Barksdale v. Franzen, 700 F.2d 1138, at 1139-1142); (Ill.
Rev.Stat.1977, ch. 38, par. 1005-8-4); (Ill.Rev.Stat.1973, ch. 38,
par. 1003-3-3(a)(1).

This point of view is the bottom line regarding petitioner's
"concurrent sentence".  And, even though under the Indeterminate
Sentencing Act the "most minimum" term was in some cases ignored
in favor of the "20 years less time credit for good behavior"
provision of law, as an offender's indeterminate minimum sentence
term, to avoid the problem of unnecessary and redundant parole
hearings; evenso earned good time was required to be applied to
the most minimum term to advance date of parole and early release
eligibility and, then, to the maximum to advance the date beyond
which a prisoner could not be incarcerated.  Johnson v. Franzen,
34 Ill.Dec. 153, at 154.

The Prisoner Review Board (and the State respondent) in this case erroneously ignored the factual & legal aspects of petitioner's concurrent sentence.  They did so when the decision was made to deny him an early release fixed release outdate from prison custody. Using an incorrect conception of petitioner's effective indeterminate minimum sentence term; they applied § 3-3-2.1 (b), that mandated for those prisoners who had been sentenced to an indeterminate minimum sentence term of "20 years or more" to not get a fixed release date, to exclude him from that benefit.

The application of the "20 years or more" as his minimum sentence term and as a determiner of petitioner's early release eligibility was retrospectively in violation of the Ex Post Facto Clause of our Constitution.  The use of this "change" or misconception of his minimum sentence term eliminated his eligibility for early release and materially altered petitioner's situation to his disadvantage.  See: Greenfield v. Scafati, 277 F.Supp. 644 (Mass. 1967), at 646; WEAVER, Supra 101 S.Ct. 960, at 967.  In that, its application and use on petitioner ignored:  (i.)  the nature of his concurrent sentence of 4 2/3 - 175 years that qualified his eligibility to get an early release fixed release outdate from prison custody.; (ii.)  the effective minimum sentence term that mandated his early release eligibility to be "20 years less time credit for good behavior" and not that of "20 years or more" -- (§ 3-3-3(a)(1).; and, (iii.)  his vested right to have the good time he had earned to be applied so as to qualify his eligibility for early release.  (Williams v. Irving, 53 Ill.Dec. 746, at 751; Wolff v. McDonnell, 94 S.Ct. 2963; McGee v. Snyder, 260 Ill.Dec. 209.

Therefore, where petitioner's effective concurrent sentence; his mandated minimum sentence term of "20 years less time credit for good behavior"; and, where an incorrect version of such minimum sentence term was used (without crediting the good time he had earned to actually cause it to be reduced) to deny him the benefit of an early release fixed release outdate from prison custody....his constitutional right was violated.  Weaver v. Graham, 101 S.Ct. 960.

(Page 14)

[Point III.] EX POST FACTO CLAIM IS WELL-FOUNDED ON ARBITRARY AND VINDICTIVE GOVERNMENTAL POWER WHICH AMENDED PENAL STATUTE TO BE LAW: Equally, petitioner herein argues that this violation of the Ex Post Facto ban took place in defiance of constitutional law that restricts and guards against such abusive legislation. Truely, as actually occurred in the instant case, the danger exists that legislatures might disfavor certain criminal offenders after the fact of their crimes and sentencing; the Framers of our Constitution thus believed it necessary to enact the Ex Post Facto ban to restrict governmental power and restrain it from passing arbitrary potentially vindictive legislation. Garner v. Jones, 120 S.Ct. 1362 at 1369; Malloy v. South Carolina, 35 S.Ct. 507 at 508; WEAVER, Supra, at 964-965.

From the official legislative record the original intent of Illinois' Determinate Sentencing Act was purposed to provide all prisoners, who had been sentenced under the old sentencing law and whose good behavior merited it, an early release fixed release outdate from prison custody. Additionally, the intent & purpose of the Act is to minimize and to equalize the disproportionate sentence terms the old sentencing law allowed to be imposed on offenders. Nevertheless, dispite the enlightened egalitarian intent of the Act, after the legislative debates took place regarding it, it was restrictively amended to deny a fixed release date to a certain class of prisoners....who had been also sentenced under the old sentencing law. See: (P.A. 80-1099, HB 1500); (730 ILCS, 5/3-3-2.1 (a)(b)); (EXTRACT of June 28, 1977 Debates Re HB 1500, Exhibit # 8, (Emphasis Added), attached hereto); (EXTRACT of November 22, 1977 Senate's Debates Re HB 1500, Exhibit # 9, (Emphasis Added), attached hereto).

The legislative discussions and debates regarding House Bill 1500 reveal that the restrictive amendment of the Determinate Sentencing Act, Section 3-3-2.1 (b), is an impermissible product of discrimination. Clearly, the legislature developed a disfavor against a certain class of prisoners because they were considered

to be (after the fact of their crimes & sentencing) especially
very serious offenders and "bad people".  Thus, a "certain class
of prisoners" was singled-out from all other prisoners and denied
the benefit of eligibility for an early release fixed release
outdate.

The amended penal statute, 3-3-2.1 (b), that was used to
accomplish its impermissible action and the eligibility limiter of
"20 years or more" employed as a yardstick to deny early release
fixed release outdates to some prisoners....were arbitrary and
vindictive legislation.  Therefore, Section 3-3-2.1 (b) stands in
violation of the equal protection; due process and the Ex Post
Facto Prohibition Clauses of the Constitution.  This is so because
a State is banned from differentiating between a group of similarly
situated prisoners (by arbitrarily & vindictively giving some but
not all eligibility for an early release fixed release outdate
from prison custody)....without any rational basis or justification
for the distinction.  U.S.C.A. Art. 1, §10, cl. 1); Malloy, Supra
at 508-509; Kring v. Missouri, 2 S.Ct. 443, at 449; Fletcher v.
Peck, 6 Cranch 87; Calder v. Bull, 3 Dall. 386, at 395-396.

The detrimental "effects" of the ex post facto statute, 3-3-
2.1 (b), is so-obviously disadvantageous to petitioner & the class
of certain prisoners who were denied their early release fixed
release dates, over 25 years ago; that even the present Governor
of this State is of a condemning opinion and is outraged at the
practice of such unfair punishment.  This impermissible punishment,
visited on that class of certain men & women prisoners, is a
consequential product of legislative arbitrary & vindictive discrim-
ination.  It was motivated by legislators who disfavored certain
prisoners, after the fact of their crimes, and; was accomplished
by the passage of 3-3-2.1. (b) amendment into law.  Therefore,
that penal statute should be held in violation of petitioner's
constitutional rights.  WEAVER, Supra, at 964.  (See: SCR, Exhibit
# 4, attached thereto).

CONCLUSION

For prisoners who committed crimes before its enactment, § 3-3-2.1 (b) substantially alters the consequences attached to a crime already completed, and therefore changes "the quantum of punishment." Dobbert v. Florida, 97 S.Ct. 2290, 2298. Thus, in this case, where petitioner's statutory indeterminate minimum sentence and his eligibility for early release of "20 years less time credit for good behavior" were annexed guarantees on his sentence as pronounced by the trial court, they were, in fact, determinants of his prison term....and petitioner's effective punishment is altered in violation of the ex post facto law once those determinants are changed or eliminated by a new penal statute in any respect. Lindsey v. Washington, 57 S.Ct., at 799; Greenfield v. Scafati, 88 S.Ct. 1409; Rodriguez v. U.S. Parole Comm'n, 594 F.2d 170 (CA7 1979). Therefore, no retrospective law can be applied to petitioner if it works a detriment on him. WEAVER, supra, at 966-967.

WHEREFORE, based on the claims, relevant facts and the evidence presented, this Honorable Court should find that § 3-3-2.1 (b) is, in fact and in effect, an impermissible ex post facto retrospective law that has disadvantaged Petitioner HEIDELBERG. That such penal statute has violated petitioner's constitutional right, under the Ex Post Facto Clause of the Constitution, to be free from having such law imposed on him. And, the Court should find that the Illinois Supreme Court's ruling on this matter was wrong; resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in Weaver v. Graham, 101 S.Ct. 960.

Thus, petitioner's application for the writ of habeas corpus should be granted and the writ issued as requested.

(Page 17)

<u>EXTRAORDINARY HABEAS CORPUS RELIEF REQUESTED</u>

The normal and proper relief upon a conclusion that a state prisoner is being treated under an ex post facto law is to remand to permit the state court to apply, if possible, the law in place when his crime occurred. <u>Lindsey v. Washington</u>, supra, 57 S.Ct., at 799. However, in remanding for such relief, it should be noted that only the ex post facto portion of the new law is void as to petitioner, and therefore the severable provisions or part of the Determinate Sentencing Act, <u>§ 3-3-2.1 (a)</u> and other parts, that are not ex post facto can be applied to him. <u>In Re Medley</u>, 10 S.Ct. 384, at 388.

Nevertheless, due to the reason that the normally proper relief is plainly not possible to be applied -- so as to put petitioner in a "Good Standing" from the ex post facto violation; he is requesting the Court to issue the habeas writ and order extraordinary relief. In that, a belated giving of an early release fixed release date to the petitioner by the Prisoner Review Board would neither remediate the ex post facto violation <u>nor</u> could such normal relief put him in the "Good Standing" he had when his eligibility for early release and a fixed release outdate from prison custody was first denied. At that time, approximately in September 1981, the date of his first parole hearing when his early release fixed release outdate should have been determined; petitioner then stood ready to spend a much shorter period of time in prison custody, to be released from prison custody on his fixed outdate in (most probably)   November 1981 or sometime in 1982 and thereafter granted an early final discharge from his sentence in 1985-1986....after serving a period of Mandatory Supervised Release.

Once it is determined that prisoners are being held under an ex post facto law the Constitutional remedy is immediate or speedy release. It does not matter if their convictions were errorless or whether or not they have been rehabilitated. Over

(Page 18)

118 years ago, in 1889, James J. Medley and James H. Savage were both convicted of murder and sentenced to "...Hang by the neck until dead..." However, less than one year after the commission of their crimes, they were both set free by the Constitutional exercise of the ex post facto prohibition. In reaching its decision to free the men, the Supreme Court held that; once it is determined that prisoners are being held under an ex post facto law, the Constitutional remedy is immediate or speedy release. (In re Medley, 10 S.Ct. 384; In re Savage, 10 S.Ct. 189. Therefore, as a matter of justice, it is requested that extraordinary habeas corpus relief be granted to put petitioner in the "Good Standing" he would have had; if not for the ex post facto amended penal statute that cause his constitutional rights to be violated and him to be excluded from the benefit of a fixed release outdate from prison. This relief is also requested as a matter of due process.

SUBSCRIBED and SWORN TO before me on this 12th day of June, 2007.

Mr. Cleve Heidelberg
Petitioner Pro Se

"OFFICIAL SEAL"
ELIZABETH A ROBSON
Notary Public, State of Illinois
My Commission Expires 12/05/10

NOTARY PUBLIC:

(Page 19)