E-FILED
Friday, 22 June, 2007  02:01:06 PM
Clerk, U.S. District Court, ILCD

IN THE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA, ILLINOIS

| | |
|---|---|
| United States of America ex rel. ) | |
| ) | |
| CLEVE HEIDELBERG, JR., ) | |
|     Petitioner Pro Se, ) | Case Number: |
| VS. ) | |
| ) | |
| JOHN CHAMBERS, Warden, ) | |
| Danville Correctional Center, ) | |
| ) | |
|     Respondent. ) | |

**FILED**

JUN 2 2 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

<u>PETITIONER'S APPENDIX</u>
<u>OF SUPPORTING EXHIBITS</u>

<u>Contents:</u>

EXHIBIT # 1....PETITION FOR HABEAS CORPUS RELIEF (filed in State
    Court) (10 pages)
EXHIBIT #  1A....SENTENCING ORDER (4 pages)
EXHIBIT # 2....SUPPLEMENTAL HC PETITION (4 pages)
EXHIBIT # 2A....§ 730 ILCS, 5/3-3-3 (1 page)
EXHIBIT # 3....§ 730 ILCS, 5/3-3-2.1 (1 page)
EXHIBIT # 4....NEWS ARTICLE (1 page)
EXHIBIT # 5....HC DENIAL ORDER (1 page)
EXHIBIT # 6....APPELLATE COURT OPINION (4 pages)
EXHIBIT # 7....PLA DENIAL ORDER (1 page)
EXHIBIT # 8....EXTRACT OF June 28, 1977 Debates Re HB 1500 (3 P's)
EXHIBIT # 9....EXTRACT OF Nov. 22, 1977 Debate on HB 1500 (3 P's)

# PETITION OF HABEAS CORPUS

## IN THE
## CIRCUIT COURT OF VERMILION COUNTY
## DANVILLE, ILLINOIS

CLEVE HEIDELBERG,                    )

            Petitioner,              )

                                     )

        —VS—                         )        No. 06-MR-6

                                     )

JOHN CHAMBERS, Warden                )

            Respondent.              )

### PETITION FOR HABEAS CORPUS RELIEF

(Pursuant to 735 ILCS 5/10-102 et. seq.(1992))

Submitted By:

*Mr. Cleve Heidelberg*
Petitioner Pro Se

Exhibit #1

IN THE

CIRCUIT COURT OF VERMILION COUNTY

DANVILLE, ILLINOIS

| | | |
|---|---|---|
| CLEVE HEIDELBERG, | ) | |
| Petitioner, | ) | |
| | ) | |
| -VS- | ) | No. _____ |
| | ) | |
| JOHN CHAMBERS, Warden | ) | |
| Respondent. | ) | |

State of Illinois    } §§
County of Vermilion  }

## PETITION FOR HABEAS CORPUS RELIEF

Comes Now CLEVE HEIDELBERG, Petitioner Pro Se in the aboved cause of action, pursuant to 735 ILCS 5/10-102 et. seq. (1992), hereby petitions this Honorable Court for habeas corpus relief. Petitioner's original imprisonment was lawful, nevertheless, due to the facts of his claim hereafter presented, he has subsequently become entitled to be discharged from the custody of the respondent warden. In support of this petition the following is submitted for due consideration:

(1.) Petitioner HEIDELBERG is being held as a prisoner in the Danville Correctional Center, located at 3820 East Main Street, Danville, Illinois. His prison number is: #C01521.

(Page 1)

(2.)   The Respondent to this cause of action is Mr. JOHN CHAMBERS, Warden & Chief Administrative Office of the Danville Correctional Center, located at 3820 East Main Street, Danville, Illinois 61834.

(3.)   Petitioner HEIDELBERG, after a jury trial in November 1970, was convicted in Peoria County Case #70Y-1976 of the offenses of armed robbery & murder.  Thereafter, he was sentenced to inde- terminate concurrent terms of 4 2/3 to 10 years and 99-175 years.

(4.)   A copy of petitioner's commitment & mittimus regarding his incarceration is hereby appended to this petition as Exhibit # 1.

(5.)   Petitioner brings this action to the attention of the Court to find remedy for the imposition of a more severe punishment on him than the law prescribed at the time of his offense.  Subse- quent to his sentencing, a new statute dictated a longer period of incarceration for him by postponing his early release eligibility; and, excluding him from receiving the benefit of a Fixed Release Date.  This new statute violated the ex post facto clause by its retrospective application to change his statutorily mandated minimum sentence term and his early release eligibility.

(6.)   Petitioner petitions to be enlarged from prison due to the unlawful ex post facto change of his statutorily mandated minimum sentence term; the postponment of his early release eligi- bility and his unconstitutional exclusion from receiving a Fixed Release Date.  AS HEREAFTER RELATED:

(Page 2)

<u>CLAIM PRESENTED FOR RELIEF</u>

&

<u>PETITIONER'S SUPPORTING MEMORANDUM</u>

<u>OF FACTS; ISSUES & AUTHORITIES</u>

# NEW PAROLE STATUTE MUST BE DECLARED UNCONSTITUTIONAL, IN VIOLATION OF EX POST FACTO CLAUSE OF UNITED STATES CONSTITUTION, WHERE IT RETROSPECTIVELY "CHANGED" SENTENCING LAW SUBSEQUENT OF PETITIONER'S OFFENSE; THEREBY POSTPONING HIS EARLY RELEASE ELIGIBILITY AND EXCLUDING HIM FROM ADVANTAGE & BENEFIT OF GETTING A FIXED RELEASE DATE.

Petitioner HEIDELBERG, after a jury trial in November 1970, was convicted of the offenses of armed robbery & murder.  He is serving an indeterminate concurrent sentence; consisting of 4 2/3 to 10 years and 99-175 years.  He has been continuous incarcerated for 35 1/2 years regarding such concurrent sentences and has neither been released on paroled nor early released.  (Exhibit # 1).

His minimum sentence term and eligibility for parole or early release concerning his murder conviction were mandated by statute and annexed to his sentence for that offense.  In that, the parole and sentencing laws in effect at the time of his offense, Ill.Rev.Stat. ch. 38 § 1003-3-3, set and prescribed his effective minimum sentence term and provided for his eligibility for parole or early release, to be:  "...(a)(1) * * * 20 years less time credit for good behavior...".  (Ill.Rev.Stat., ch. 38 § 1003-3-3(a)(1) (1973)). (Exhibit # 2).

Thus, at the time of his offense & sentencing for murder, petitioner's minimum sentence term for that offense was set at "20 years less time credit  for good behavior".  That "20 years less time credit for good behavior", as set by the law, was and is, in fact & in effect, his minimum sentence term.  Additionally, it dictates his eligibility for parole or early release from prison; especially when he could be legally paroled or early released after satisfaction of that minimum sentence term prescribed for him to serve.  Even though the trial court imposed a lengthy indeterminate sentence on him for the murder offense; the sentence term imposed on him by the court as a minimum sentence term was of no legal consequence -- in view of the statutorily prescribed minimum sentence term applicable on him under the parole & sentencing statutes effective at the time of his sentencing.  People v. Henderson, 4 Ill.Dec. 76; People v. Doom, 6 Ill.Dec. 775, at 778.

Subsequently, contrary to law, petitioner's effective statutorily prescribed minimum sentence for the murder offense of "20 years less time credit for good behavior" was effectively "changed" to that of "20 years or more" by a new parole statute.  That happened on February 1, 1978 when the Determinant Sentencing Act became effective; and when 730 ILCS, § 5/3-3-2.1 (b) was amended thereto.

That new statute (5/ 3-3-2.1 (b)) neither succeeded not supplanted the legal authority of the statute (3-3-3(a)(1) which mandated the "20 years less time credit for good behavior" as petitioner's minimum sentence term for the murder offense; and, additionally indicated his eligibility for parole or early release. Nevertheless, such new statute (Exhibit # 3) has been applied so as to change; set and delineate a new minimum sentence term of "20 years or more" on petitioner...to his disadvantage.  In that, this new minimum sentence term was then used by the Prisoner Review Board (Parole Board) to greatly postpone his eligibility for early release; and, it eliminated & excluded petitioner from receiving the benefit & advantage of an early release Fixed Release Date.

Thus, the new parole statute effectively excluded petitioner from the benefit of getting an early release Fixed Release Date,

This early release benefit was allowed to all other offenders by the Determinant Sentencing Act who had been sentenced under the prior Indeterminate Sentencing Act.  730 ILCS, § 5/3-3-2.1(a); (See:  Exhibit # 3).

Therefore, this action presents the issue of whether or not changes in parole statutes violate the constitutional prohibition against EX POST FACTO LAWS (U.S.Const., Art. I, § 9, cl. 3, and § 10, cl. 1.).  This fundamental constitutiuonal law forbids imposing more severe punishment than the law prescribed at the time of the offense.  Equally, the Ex Post Facto Clause applies to changes in statutes that result in postponing parole or other release eligibility.  Weaver v. Graham, 450 U.S. 24 at 35-36; Warden v. Marrero, 417 U.S. 653, 663; Shepard v. Taylor, 556 F.2d 648, 654 (2nd Cir. 1977).  Thusly, petitioner complains that the parole statute, questioned in this cause of action, which dictates a longer period of incarceration for him; by eliminating any opportunity for his early release from prison and excluding him from the benefit of getting a Fixed Release Date...violated the Ex Post Facto Clause when it was retrospectively applied to effectively change his minimum sentence term and his early release eligibility that were statutorily prescribed at the time of his offense.

A new statute violates the Ex Post Facto provision of the United States Constitution, as a matter of constitutional law, if the law in question retrospectively applies to events occurring before its enactment and also disadvantages the offender affected by the law.  U.S.C.A. Const.Art I, §9, cl. 3; Weaver v. Graham, 101 S.Ct. 960, 964; Lett v. Klincar, 104 Ill.Dec. 422, 423-424. In WEAVER, Supra at 29-30 the Court held that this constitutional law is true even if the new statute do not create a liberty interest or entitlement protected by due process; as long as such new statute does not represent an unchallengable change in administrative regulations or one that affects a parole board's exercise of discretion.  Raske v. Martinez, 876 F.2d 1496, at 1498-1502; Flemming v. Oregon Bd of Parole, 998 F.2d 721, 724-27 (9th Cir.1993); Jones v. Murray, 962 F.2d 302 at 310; Alston v. Robinson, 791 F.Supp. 569.

The two critical elements of retrospective application and disadvantage to the offender must be present for a new statute to be Ex Post Facto.  Those elements are plainly apparent in the instant case.

Initially, prior to the enactment of the Determinant Sentencing Act in February 1978; petitioner's actual & effective statutory minimum sentence term for his murder offense was "20 years less time credit for good behavior".  Ill.Rev.Stat., ch. 38 §1003-3-3(a)(1) (1973).  That minimum sentence term was used as the time yardstick to determine an offender's eligibility for parole consideration and his eligibility for any early release available to him.  Subsequently, however, the new statute in question retrospectively "changed" petitioner's effective statutory minimum sentence term from that of "20 years less time credit for good behavior" to that of "20 years or more".  730 ILCS, § 5/3-3-2.1(b).  That unconstitutional change was accomplished by the circumvention of; misinterpretation of and the disregard of the controlling statute that plainly indicated petitioner's minimum sentence term.

Thereafter, such "change" of petitioner's minimum sentence term was then actually used to redetermine his early release eligibility.  Thereby, the Prisoner Review Board excluded him from receiving the benefit of an early release Fixed Release Date because it erroneously considered that the minimum term of his sentence for the murder offense to be that of "20 years or more".

It was contrary to State and Federal constitutional law to deny petitioner the benefits and advantages provided by the new sentencing act.  And, whether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question.  Lindsey v. Washington, 57 S.Ct. 797 at 798.  On its face, the statute now in question postponed; eliminated his early release elgibility and prevented him from receiving the benefit of early release Fixed Release Date.  By definition, the new statute increases the period that someone in petitioner's

position must spend in prison.  Thus, the new statute is plainly
to petitioner's substantial disadvantage where it deprives him of
all and any early release opportunity that would give him freedom
from custody and control prior to the expiration of his maximum
sentence.  In GREENFIELD,(cited below), the United States Supreme
Court ruled on a similiar "new statute" that materially altered
the situation of an accused to his disadvantage.  It found and
ruled an ex post facto violation had happened when a statute was
applied to deny gain time to an inmate whose crime occurred before
the statute's enactment.  The inmate was disadvantaged, the court
indicated, by that statute's new restrictions on eligibility for
early release.  Greenfield v. Scafati, 88 S.Ct. 1409.

Essentially, any official post-sentencing action, which is
not procedural or remedial in nature, that delays or eliminates an
offender's eligibility for early release and disadvantages him,
runs afoul of the Ex Post Facto proscription.  Barksdale v. Franzen,
700 F.2d 1138 at 1143 (7th Cir.1983).  Therefore, petitioner was
entitled to have the most favorable early release eligibility
applied to give him the benefit of a Fixed Release Date.  BARKSDALE,
Supra at 1143.

Further, petitioner do assert, that if his minimum sentence
term would not have been changed by the new statute, he would not have
been excluded from receiving an early release Fixed Release Date.
Instead, he would have been enlarged from prison on early release
within six months to one year following the date of his first
parole hearing in 1979.  In that, upon petitioner's information
and belief, he believes it was and is the practice of the Prisoner
Review Board to set Fixed Release Dates, on those it believes are
eligible offenders, so as to allow for his or her early release
(via the Fixed Release Dates) within six months to one year following
the setting of such dates.  Thus, petitioner complains that if the
new statute would not have postponed or eliminated his early
release eligibility; he would not have been excluded from getting
the benefit of a Fixed Release Date and would have been early
released on or about November 1980.

(Page 7)

Therefore, for the foregoing reasons, this Honorable Court should hold that petitioner's constitutional right not to have any Ex Post Facto law, applied retrospectively to his disadvantage, has been violated. And, additionally, this Court should declare the provision of law (730 ILCS, § 5/3-3-2.1(b)), which changed and postponed petitioner's eligibility for early release; and, excluded him from getting the benefit & advantage of a Fixed Release Date, unconstitutional, as it has been applied to disadvantage him by its application on him.

Further, petitioner asks this Court to take due Judicial Notice and give consideration to the approximate 300 "C-Number" prisoners, whose early release Fixed Release Outdates have also been wrongfully denied to them here in Illinois. They too have had their statutory minimum sentence terms changed by the new statute. Similiarly, their early release eligibility have been postponed and such Ex Post Facto new statute has violated their constitutional rights. And, they too have been unnecessarily lanquished in the prisons for 27, 35 or more years without the early release Fixed Release Outdates due to them.

Equally, please take Judicial Notice and give due consideration to our Governor's opinion on this matter. In that, he is of the opinion that that section of law which excludes the "C-Numbers" from the benefit of a Fixed Parole Release Outdate is morally wrong & unfair. (See: Exhibit 4).

Jurisdiction over this application can be assumed because no issue of fact is presented and all this court need do is examine the relevant & material law regarding petitioner's cause of action. Holzapple v. Ragen, 1954, 117 N.E.2d 390. Where petitioner has become entitled to be discharged because, though the original imprisonment was lawful, the subsequent application of the new statute to deny him an early release Fixed Release Outdate has resulted in him now being illegally restrained of his liberty.... and the habeas writ should issue. People ex rel. Harper v. Brantley, 341 N.E.2d 126.

(Page 8)

WHEREFORE, Petitioner CLEVE HEIDELBERG, beseech this Honorable Court to hold that his constitutional right not to have any ex post facto law retrospectively applied to disadvantage him has been grieviously violated; that he is to be enlarged from prison on regular parole or Mandatory Supervised Release due to the past unlawful postponment of his early release eligibility and that 730 ILCS 5/3-3-2.1 (b), of the Determinant Sentencing Act, is unconstitutional in its application.

SUBSCRIBED and SWORN to before me on this 11th day January 2008. 6

Cleve Heidelberg
Petitioner
Mr. Cleve Heidelberg

"OFFICIAL SEAL"
ELIZABETH A. ROBSON
Notary Public, State of Illinois
My Commission Exp. 10-10-06

NOTARY PUBLIC:

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT OF ILLINOIS

PEORIA COUNTY

TRIAL DIVISION

AUG 24 1976

LESTER C. GERBER
Clerk Of The Circuit Court
Peoria County, Illinois

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.  70 Y 1976 |
| | ) |
| CLEVE HEIDELBERG, JR. | ) |
| | ) |
| Defendant. | ) |

O R D E R

Now on this date of August 24th, 1976, the People are present by Donald C. Courson, Assistant State's Attorney, and the defendant is present in his own person and the Court makes the following findings:

This cause coming on for resentencing pursuant to the mandate of the Illinois Supreme Court;

That the pre-sentence investigation and report prepared by the Adult Probation Officer has been on file at least three (3) days prior to this date;

That for the purpose of aiding in determining the sentence, the Court affords the defendant and the People the opportunity to present

(CONT.)

P-1

the evidence in aggravation and mitigation, so as to defendant's moral chracter, life, family, occupation and previous criminal record, if any;

That the Court affords the defendant and the People the opportunity to argue as to sentencing alternatives;

That the defendant is given the opportunity to make a statement in his own behalf and has nothing further to say;

That the defendant has been informed by the Court of his right to appeal, of his right to request the Clerk of the Court to prepare and file a Notice of Appeal in his behalf and of his right, if indigent, to be furnished, without cost to him, with a transcript of the proceedings and record on appeal and with counsel on appeal.

That the defendant is represented by Counsel at this hearing by Daniel Furrh.



RECEIVED
OCT 1 5 1976
RECORD OFFICE

(CONT.)

P-2

-2-

That there was previously a trial by the Court and a jury in this cause and the defendant was found guilty of the crime so charged by said jury.

Now on this date of August 24th, 1976, the Court hereby orders the following:

IT IS THE ORDER OF THIS COURT that the defendant, Cleve Heidelberg, on the verdict of guilty to the crime of Attempt (Armed Robbery) is sentenced to imprisonment at the Department of Corrections of Illinois for a term of not less than four and two-thirds (4-2/3) years nor more than fourteen (14) years and the maximum is fixed at fourteen (14) years and the minimum is fixed at four and two-thirds (4-2/3) or until said defendant is discharged by law.

IT IS THE ORDER OF THIS COURT that the defendant, Cleve Heidelberg, on the verdict of guilty to the crime of Murder is sentenced to imprisonment at the Department of Corrections of Illinois for a term of not less than ninety nine (99) years nor more than one hundred

seventy five (175) years and the maximum is fixed at one hundred seventy five (175) years and the minimum is fixed at ninety-nine (99) years, or until said defendant is discharged by law.

The Court specifically orders that said sentences in each count hereby ordered to be served with the Department of Corrections of Illinois by this defendant run concurrently with each other.

The Court further orders that a judgment is entered for costs.

FURTHER, IT IS ORDERED that Mittimus is to be issued and executed without delay. The defendant is remanded to the custody of the Sheriff of Peoria County, Illinois, for transmittal to the Department of Corrections of Illinois.

ENTERED: _Sept. 30/76_

_Chas Iben_
CHARLES IBEN - CIRCUIT JUDGE
TENTH JUDICIAL CIRCUIT

P-4

CIRCUIT COURT OF VERMILION COUNTY

DANVILLE, ILLINOIS

| | |
|---|---|
| CLEVE HEIDELBERG, | ) |
|         Petitioner, | ) |
| | ) |
|      -VS- | ) #06-MR-6 |
| | ) |
| JOHN CHAMBERS, Warden | ) |
|         Respondent. | ) |

PETITIONER'S SUPPLEMENTAL PETITION

FOR

HABEAS CORPUS RELIEF

Comes Now CLEVE HEIDELBERG, Petitioner in the aboved cause of action; and, he hereby submits a necessary Supplemental Petition for Habeas Corpus Relief to the attention of the court. In support, the following is presented for the court's consideration by Petitioner:

(1.)  This Supplemental Petition is necessary to clarify the intent and the construction of Illinois' constitutional ex post facto clause protection.

(2.)  And, this Supplemental Petition is necessary to afford your Pro Se Petitioner opportunity to submit additional supportive authority, that is relevant and material regarding the applicability of Illinois' constitutional ex post facto clause protection; as it applies to the claim and question presented in his original petition.

(Page One)

Exhibit #2

SUPPLEMENTAL ARGUMENT

ON THE QUESTION WHETHER ELIMINATION OF AN OPPORTUNITY FOR
EARLY RELEASE IS A CHANGE IN PUNISHMENT ASSOCIATED WITH A
CRIME OR RESULTS IN THE INFLICTION OF GREATER PUNISHMENT;
OUR SUPREME COURT HAVE RULED:  THIS QUESTION IS NOT TO BE
DETERMINED BY THE "CHANGE IN SENTENCE" STANDARD BUT BY THE
ACTUAL TIME A PRISONER SPENDS IN PRISON OR THE "QUANTUM OF
PUNISHMENT" STANDARD.  Barger v. Peters, 206 Ill.Dec. 170,
172-173.


The intent of the Illinois ex post facto clause (Ill.Const.
1970, art. I, § 16) was to conform to the Federal Constitution's
prohibition on the States from enacting any ex post facto law.
Therefore, in construing this State's constitutional provision,
our Supreme Court has no basis to depart from its constuction of
the Federal ex post facto clause.  In fact, it has long interpreted
Illinois' expost facto clause in step with United States Supreme
Court's holdings.  People v. Tisler, (1984), 82 Ill.Dec. 613;
People v. Ramey, 178 Ill.Dec. 19.

In WEAVER V. GRAHAM, (1981), 101 S.Ct. 960, United States
Supreme Court used an expansive interpretation of the ex post
facto clause to strike down a Florida statute which reduced "gain
time" credit earned.  Such legislation, the Court explained,
could be constitutionally applied retrospectively only if it did
not work to a prisoner's "detriment." (WEAVER, supra at 966).
Thus, the Court determined the disadvantage of constricting the
opportunity to earn early release effectively "lengthen[ed]" the
period of actual incarceration, making more onerous the punishment
for already committed crimes. (WEAVER, supra at 966-67).

(Page Two)

The Illinois Supreme Court, in Barger v. Peters, 1994, 206
Ill.Dec. 170, used the same interpretation of the expost facto
prohibition to invalidate and to find new legislation unconstitu-
tional which precluded application of good conduct credit to
categories of inmates previously eligible for it.  The Court
indicated, the questioned legislation excluded inmates from the
advantage & benefit of the opportunity to increase good-conduct
credit and thus it ruled such inmates must be allowed the early
release enhanced benefits which the statute created and provided
to other inmates.  (Barger v. Peters, supra at 172-173).

The question whether elimination of an opportunity to increase
good-conduct credit is a change in the punishment associated with
a crime or results in the infliction of greater punishment was
resolved by the Illinois Supreme Court in BARGER, supra.  Therein
the Court rejected the view that punishment for ex post facto
clause purposes to mean simply the period of incarceration pre-
scribed by a judge for a person convicted of a crime--that is,
the sentence controls the answer to the foregoing question.
Instead, the Court construed "punishment" to mean the actual time
that such a person spends in prison.  Barger v. Peters, 206
Ill.Dec. 170 at 172.

In the instant case before this court, Petitioner HEIDELBERG
complains that the questioned new statute (730 ILCS, §5/3-3-2.1
(b)) actually "changed" the punishment associated with & annexed
to his (alleged) crime.  In that, it did so by effectively lengthening
his statutorily imposed minimum sentence from "20 years less time
credit for good behavior" to that of "20 years or more".  And,
equally, as in WEAVER and BARGER the questioned new statute
resulted in the infliction of greater punishment on him.  Especially,

(Page Three)

where the elimination of his early release eligibility increased the "quatum of punishment" by affecting the time he would be (and have been) actually incarcerated under the sentence imposed. Therefore, the new statute's elimination of any possibility for petitioner to reduce his prison time and to have the benefit of a Fixed Release Date made the consequences associated with his crime more onerous to his great disadvantage.

Petitioner have brought BARGER v. PETERS to the attention of the Court because it deals with a highly similar question & issues presented in the case now before the court. It is relevant and material to both the determination & resolution of petitioner's claim; and, to the Illinois Supreme Court's view of ex post facto jurisprudence in this State.

Clearly, Petitioner is a member of the class of inmates who were serving a statutorily imposed minimum sentence of "20 years less time credit for good behavior" and were eligible to receive the benefit of any intervening early release statute available to them prior to February 1, 1978. However, he was deprived of any and all enhanced early release eligibility after February 1, 1978 when the new statute was retrospectively applied so as to change his statutorily imposed minimum sentence and when he was subsequently denied a Fixed Release Outdate.

Therefore, the requested Habeas Corpus Relief should be granted to your petitioner.

SUBSCRIBED and SWORN to
before me on this 7th day
of February 2006.

_Elizabeth A Robson_
NOTARY PUBLIC:

_Mr. Cleve Heidelberg_
Petitioner

```
++++++++++++++++++++++++++++
+      "OFFICIAL SEAL"      +
+   ELIZABETH A. ROBSON     +
+ Notary Public, State of Illinois +
+ My Commission Exp. 10-10-06 +
++++++++++++++++++++++++++++
```

(Page Four)

### 5/3–3–3.  Eligibility for parole or release

§ 3–3–3.  Eligibility for Parole or Release.  (a) Except for those offenders who accept the fixed release date established by the Prisoner Review Board under Section 3–3–2.1, every person serving a term of imprisonment under the law in effect prior to the effective date of this amendatory Act of 1977 shall be eligible for parole when he has served:

(1) the minimum term of an indeterminate sentence less time credit for good behavior, or 20 years less time credit for good behavior, whichever is less; or

(2) 20 years of a life sentence less time credit for good behavior;  or

(3) 20 years or one-third of a determinate sentence, whichever is less, less time credit for good behavior;

(b) No person sentenced under this amendatory Act of 1977 or who accepts a release date under Section 3–3–2.1 shall be eligible for parole.

(c) Except for those sentenced to a term of natural life imprisonment, every person sentenced to imprisonment under this amendatory Act of 1977 or given a release date under Section 3–3–2.1 of this Act shall serve the full term of a determinate sentence less time credit for good behavior and shall then be released under the mandatory supervised release provisions of paragraph (d) of Section 5–8–1 of this Code.

(d) No person serving a term of natural life imprisonment may be paroled or released except through executive clemency.

(e) Every person committed to the Juvenile Division under Section 5–10 of the Juvenile Court Act [1] or Section 5–33 of the Juvenile Court Act of 1987 [2] or Section 5–8–6 of this Code and confined in the State correctional institutions or facilities if such juvenile has not been tried as an adult shall be eligible for parole without regard to the length of time the person has been confined or whether the person has served any minimum term imposed.  However, if a juvenile has been tried as an adult he shall only be eligible for parole or mandatory supervised release as an adult under this Section.

P.A. 77–2097, § 3–3–3, eff. Jan. 1, 1973.  Amended by P.A. 78–939, § 1, eff. July 1, 1974;  P.A. 80–1015, § 1, eff. Oct. 1, 1977;  P.A. 80–1099, § 3, eff. Feb. 1, 1978;  P.A. 85–1209, Art. III, § 3–36, eff. Aug. 30, 1988.

Formerly Ill.Rev.Stat.1991, ch. 38, ¶ 1003–3–3.

[1] Former Ill.Rev.Stat. Chapter 37, ¶ 705–10 (repealed).
[2] 705 ILCS 405/5–33.

EXHIBIT # 2 A

**5/3–3–2.1.  Prisoner Review Board—Release date**

§ 3-3-2.1.  Prisoner Review Board—Release Date.  (a) Except as provided in subsection (b), the Prisoner Review Board shall, no later than 7 days following a prisoner's next parole hearing after the effective date of this Amendatory Act of 1977, provide each prisoner sentenced under the law in effect prior to the effective date of this Amendatory Act of 1977, with a fixed release date.

(b) No release date under this Section shall be set for any person sentenced to an indeterminate sentence under the law in effect prior to the effective date of this Amendatory Act of 1977 in which the minimum term of such sentence is 20 years or more.

EXHIBIT  #  3

news

# Rod Blagojevich as governor: 'I'll fire prison boss'

by Chinta Strausberg
staff reporter

If elected, Democratic gubernatorial hopeful Rod Blagojevich said he'll fire Illinois Department of Corrections Director Don Snyder because the prison system is too broken to be fixed.

Referring to the Tamms prison where inmates are virtually kept in their cells for almost 24 hours, Blagojevich said at a *Chicago Defender* Editorial Board meeting: "The problem with the Tamms program is the problem of the criminal justice system and goes to the (use of) one size fit all" formula he says doesn't work.

He said the minimum mandatory sentences "are wrong because they don't apply fairly because every case, every person's background is also wrong.

He said treating all inmates the same is also wrong, and it should not apply across the board with this one-size fit all."

"You have to reform the Tamms system, and it should be the details, you look at

Vowing to reform the prison system, Blagojevich said he'd begin by firing Snyder. "I know him, I don't dislike him personally, but, I knew him when I was a state representative.

"He is Pate Philip's (Senate President) appointment and he views criminal justice like Pate Philip, and it's too

simplistic, too rigid, too punitive and it's not rehabilitative enough."

He said there is a morale problem that exist as well. Blagojevich further said it is "unfair" to have the "C." number inmates who have been languishing in prison since the 1970s with no outdate. He vowed to end that practice he called "unfair."

"When you have a budget crisis and you're cutting money to hospitals that serve poor people, hospitals that serve communities in rural communities, and cutting programs that help people, it seems to me" that the state needs a governor with different priorities.

Blagojevich also vowed to reform the Illinois Lottery to ensure that the proceeds go towards education and not, as it currently is, just a swap of funds from the general revenue pool.

He also said he's not going to promise something he can't deliver and as solutions.

"They're like the lottery, a bit of a shell game. They dressed up as solutions.

"They're like the lottery, a bit of a shell game. They promise a little bit. It sounds good, but when you look at the details, you say 'my mom doesn't get covered.'

"It sounds good politically, but, in the details there isn't the will or the commitment to put the money behind getting it done, so, I'm trying to be as honest as I can on my plans."



Rod Blagojevich addresses *Chicago Defender*'s Editorial Board meeting.

Photo by Louis Byrd III

*Exhibit #4*

IN THE CIRCUIT COURT
FOR THE FIFTH JUDICIAL CIRCUIT OF ILLINOIS
VERMILION COUNTY, DANVILLE, ILLINOIS

Cleve Heidelberg                    )
                                    )
              v.                    )
                                    )       Case No.  06 MR 6
                                    )
John Chambers                       )
                                    )
_____   )
                                    )

## ORDER

The Petition for Habeas Corpus Relief filed on 1/13/06 and the
Supplemental Petition filed on 2/9/06 are hereby DENIED for the
reason that the relief requested is not properly granted in a
proceeding under Habeas Corpus. The Petitioner is held in custody
under a lawful Order and Process of the Court, and no act,
omission or event has occurred which would entitle Petitioner to
discharge. The clerk is to send a copy of this Order and the docket
entry to the Defendant.

Date: 4/26/06            _____
                                      JUDGE

You have the right to appeal this decision and Order.
Within 30 days of the entry of this written Order you
have the right to request the clerk of the circuit court
to prepare and file a notice of appeal. You have the
right, if indigent, to have counsel appointed for
purposes of appeal; and to be furnished, without cost
to the defendant, with a transcript of the proceedings
at the trial or hearing.

Denialorder

NO. 4-06-0434

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

```
FILED
NOV - 8 2006
CLERK OF THE
APPELLATE COURT, 4TH DIST.
```

| | |
|---|---|
| CLEVE HEIDELBERG,<br>      Plaintiff-Appellant,<br>      v.<br>JOHN CHAMBERS, Warden, Danville<br>Correctional Center,<br>      Defendant-Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from<br>Circuit Court of<br>Vermilion County<br>No. 06MR6<br><br>Honorable<br>Michael D. Clary,<br>Judge Presiding. |

---

## ORDER

In January 2006, plaintiff, Cleve Heidelberg, filed a pro se petition for habeas corpus relief, alleging he was entitled to discharge from the custody of defendant, John Chambers, warden of Danville Correctional Center. In April 2006, the trial court denied the petition.

On appeal, plaintiff argues his constitutional rights were violated when a change in the sentencing law postponed his early release eligibility and excluded him from receiving the benefit of a fixed release date. We affirm.

### I. BACKGROUND

In 1970, a jury found plaintiff guilty of murder and attempt (armed robbery), and the record shows he is currently an inmate at Danville Correctional Center. His attempt (armed robbery) conviction resulted in an indeterminate term of not less than 4 years and not more than 10 years in prison. He received a consecutive indeterminate term of not less than 99 years and not more than 175 years in prison for his murder conviction.

In January 2006, plaintiff filed a _pro_ _se_ petition for _habeas_ _corpus_ relief pursuant to section 10-102 of the Code of Civil Procedure (735 ILCS 5/10-102 (West 2004)), claiming a new statute dictated a longer period of incarceration for him by postponing his eligibility for early release. Further, plaintiff alleged the change brought forth in section 3-3-2.1(b) of the Unified Code of Corrections (730 ILCS 5/3-3-2.1(b) (West 2004)) effectively excluded him from the benefit of receiving a fixed release date and thereby amounted to an _ex_ _post_ _facto_ violation.

In April 2006, the trial court denied plaintiff's petition, finding the relief requested was not proper for a proceeding under the _habeas_ _corpus_ statute. The court found plaintiff was being held in custody under a lawful order and process of the court, and no act, omission, or event had occurred that would entitle him to discharge. This appeal followed.

## II. ANALYSIS

Plaintiff argues his constitutional rights were violated when a change in the sentencing law postponed his eligibility for early release and deprived him of the benefit of receiving a fixed release date. We find plaintiff is not entitled to _habeas_ _corpus_ relief.

_Habeas_ _corpus_ relief is appropriate where a prisoner has been incarcerated under a judgment of a trial court that lacked jurisdiction or where some event after the prisoner's conviction requires his release. 735 ILCS 5/10-124 (West 2004); _Barney_ _v._ _Prisoner_ _Review_ _Board_, 184 Ill. 2d 428, 430, 704 N.E.2d

- 2 -

350, 351 (1998).   A petition for writ of <u>habeas</u> <u>corpus</u> for
nonjurisdictional defects is inappropriate even though the
petition alleges errors involving a denial of constitutional
rights.  <u>Barney</u>, 184 Ill. 2d at 430, 704 N.E.2d at 351; <u>Hughes v.</u>
<u>Kiley</u>, 67 Ill. 2d 261, 267, 367 N.E.2d 700, 702 (1977).  "'Where
the original judgment of conviction [is] not void, the peti-
tioner's maximum term [has] not expired, and nothing [has]
occurred to warrant the petitioner's immediate discharge, the
trial court is without jurisdiction to grant <u>habeas</u> <u>corpus</u>
relief.'" <u>Owens v. Lane</u>, 196 Ill. App. 3d 358, 360, 553 N.E.2d
784, 786 (1990), quoting <u>People ex rel. Stringer v. Illinois</u>
<u>Prisoner Review Board</u>, 163 Ill. App. 3d 1100, 1102, 517 N.E.2d
283, 284 (1987).  The only remedy available under <u>habeas</u> <u>corpus</u>
is a prisoner's immediate release from custody.  <u>Adcock v.</u>
<u>Snyder</u>, 345 Ill. App. 3d 1095, 1098, 804 N.E.2d 141, 143 (2004).

     In the case <u>sub</u> <u>judice</u>, plaintiff has not alleged an
act, omission, or event has occurred that would enable him to be
immediately discharged from custody.  Plaintiff argues the
legislature's passage of the Determinate Sentencing Act (Ill.
Rev. Stat. 1991, ch. 38, par. 1003-3-2.1 (now 730 ILCS 5/3-3-2.1
(West 2004))) violated his constitutional rights under the <u>ex</u>
<u>post</u> <u>facto</u> clause because he should be eligible for discharge
through the issuance of a fixed release date.  However, plain-
tiff's claim that he should receive a fixed release date does not
translate to an entitlement of immediate release from prison.
Moreover, plaintiff has not shown the statute is unconstitutional

- 3 -

or how a finding of unconstitutionality would entitle him to immediate discharge from prison.  Thus, plaintiff's claims fail to show he is entitled to <u>habeas</u> relief, and the trial court's denial of his petition was not in error.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, P.J., with STEIGMANN and McCULLOUGH, JJ., concurring.

- 4 -

103975

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

March 28, 2007

Mr. Cleve Heidelberg
Reg. No. C-01521
Danville Correctional Center
3820 East Main Street
Danville, IL 61834

No. 103975 - Cleve Heidelberg, petitioner, v. John Chambers,
         etc, respondent.  Leave to appeal, Appellate
         Court, Fourth District.

The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court

on May 3, 2007.



1. SECRETARY:

2.    House Bill 1500.

3.       (Secretary reads title of bill)

4. 3rd reading of the bill.

5. PRESIDING OFFICER (SENATOR BRUCE)

    Senator Egan.

SENATOR EGAN:

    Thank you, Mr. President and members of the Senate.  House
Bill 1500 is in the condition, in which the bill first came
to the Senate.  And I understand that there is comment to be made
on the bill and upon the completion of that comment, I would, at
that time, seek the approval of the Chair to be recognized once
more.

PRESIDING OFFICER (SENATOR BRUCE)

    Is there discussion?  Senator Bowers.  Senator Bowers,
excuse me.  UPI has asked leave of the Senate to take some
pictures.  Is there leave?  Leave is granted.  Senator
Bowers.

SENATOR BOWERS:

    Do I have time to straighten my tie, Mr. President?
Thank you, Mr. President.  Well, I arise in violent oppo-
sition to House Bill 1500 and I do think if you get
by the press accounts of 1500 and read the bill, you're
going to find that it's full of time bombs and I'd just like
to tell you about a couple of them.  In the first place,
let's talk about parolees.  It does away with the power of
any board or commission to violate a parolee if he commits
a violation of his parole.  I don't know why we continue
parole at all, if a man cannot be sent back to the peni-
tentiary for violation of that parole.  Secondly, it
will, in my opinion, decimate every probation depart-
ment in the State of Illinois because the bill man-
dates, mandates, in every felony case, a pre... in every

wenbig. Senate

Exhibit # 8

2. that, it mandates in every misdemeanor case where the

3. sentence is over ninety days, a presentence report.

4. There is no way in the world that any probation de-

5. partment in the State of Illinois can...can fill that

6. mandate, as far as I'm concerned. I find no provision

7. anywhere for that to be waived. In my opinion, and in

8. the opinion of the State's Attorneys' Association of the

9. State of Illinois, and incidently, I, also, now find that

10. the State's Attorneys' Association of the State of Illinois

11. as a collective body, was never consulted about House

12. Bill 1500. And I think that's just astounding that the

13. people who have to administer and prosecute under this parti-

14. cular bill would not be, at least, consulted. I under-

15. stand there may have been a State's Attorney or two that

16. was consulted, but the Association as a collective body

17. was not. In addition, I'm informed and on information

18. and I'm not certain of this point. The Circuit Judges

19. Association, as an association was not consulted. But,

20. in my opinion, and in the opinion of the State's Attorneys'

21. Association, it would destroy plea bargaining in the State

22. of Illinois and I don't care what you think of plea bargain-

23. ing, I admit that it doesn't...it doesn't fit the textbook

24. or the textbook description of...of an ideal

25. criminal justice system, but it's necessary and mandatory

26. if we're going to administer the criminal justice system

27. in the State of Illinois. And now, for the real bomb,

28. it also provides for a sentencing commission that will go

29. into the institutions and set a release date for every man

30. in those institutions. I would point out to you that's

11. Richard Speck, Paul Krump, William Ahrens, William Wither-

12. spoon and John Stamps. And Senator Buzbee, I would just

3. like to ask you how the people in Chester are going to re-

...et when John Stamps gets his release date.  I
that they're going to...I think you have another one down
there by the name of Rogers.  Go back in 1970, after a
couple of rapes, right after he got out of the institu-
tion, killed his wife and his girlfriend.  And, I don't
know how the people of Carbondale are going to react when
Rogers gets his release date.  And I'll tell you there
are an awful lot of others in those institutions that
should not be released.  And I can also say that maybe
they should be released some day, but nobody less than
God himself, should decide in 1977 when they should...when
it should happen, and that's what this commission is
mandated to do.  In addition to that, I think it's uncon-
stitutional.  It's obviously a diminution of sentence and
the only person in the State of Illinois under the Constitution
has that power is the Governor.  There are many other objections
I have to this bill.  It's poorly drafted.  I could point
out numerous areas where there are draftsmanship areas...
areas of serious consequence, but I see my time is up and
thank you, Mr. President.

PRESIDING OFFICER (SENATOR BRUCE)

Is there further discussion?  Senator Netsch.

SENATOR NETSCH:

Thank you, Mr. President.  Perhaps, somewhat to my
surprise, I rise in support of House Bill 1500.  I think
the real time bombs, Senator Bowers, are in House Bill 1,
which you've just passed, and I think they are going to
explode in our face one of these days if that bill passes,
as I assume it will, and if it's signed by the Governor,
as I assume it will, will be.  But, I think it...it does
ot, in any way reflect a well thought out, well put
ogether attempt to address the entire problem of sentenc-
ng and internal prison discipline and internal prison

JUN 2 8 1977

from Katz...Cook, Mr. Katz, to explain his vote."

Katz: "Mr. Speaker, I would like to acknowledge also the help of
Senator Sangmeister, Senator Bowers, Senator Egan and Senator
Netsch with regard to this excellent work that the Committee of
the House Judiciary II Committee has put forth.  I would mention
that this Bill marks the end of the indeterminant sentence in
Illinois.  The day of a sentence of one to life will be no more.
The day of a 400 year sentence that goes to a parole board and becomes
a 10½ year sentence will be no more.  The prisoner when he leaves
the court will know how long he will have to serve in prison.  If
he has good behavior, he will be permitted one half of the time
of the sentence of.  Everybody will know how long he will have to
serve.  One other feature that I think will be of particular
interest to Members of the House, while the Bill does not disturb
plea bargaining, the process by which the prosecution and the
defendant reach agreement, plea bargaining will be controlled.  A
record will be made of the hearing at the plea bargain.  The Judge
will have to state the reasons why he is approving the plea bargain.
Into the record of that proceeding will go the criminal record of
the defendant.  That will have to be transcribed, and all of those
proceedings will be on file in the Circuit Court, Clerk's Office
of every county in the state so citizens of this state may go in
and discover what has happened with regard to people who have been
convicted of committing crimes in their county.  Our Committee has
not only been blessed with the excellence of all of the people who
have mentioned  headed by Mr. Getty, the Chairman of the Subcommittee,
we have had remarkably faithful service from 'Mr. Bagley', who has
been the majority counsel of the Committee.  I acknowledge the
help of a great many people.  I hope and believe that the Members
of this House will be proud of their votes to concur in the Senate
Amendment to House Bill 1500."

Speaker Bradley: "The Gentleman from DuPage, Speaker Redmond, at Mr.
Carmisa's...Carmisa's desk."

Speaker Redmond: "Mr. Speaker, and Ladies and Gentlemen of the House,
I, too, desire to add my congratulations to the Members of the House

Exhibit # 9

who've worked so hard and diligently on the original version of
House Bill 1500. And also to congratulate the Members of the House,
and the Senate and the Governor's Office who've worked so hard and
diligently in order to try to work out a compromise on this most
difficult matter. However, I would like to say that there is one
aspect of this whole program that has offended me from the beginning
and it continues to offend me, and that was the methodology of the
Governor's Office in attempting to impose his will upon the Members
of the General Assembly. And I refer to a letter that was sent out
asking for campaign contributions in which it said that the two
standards of determining whether or not a person would receive support
...financial support from the Governor's campaign fund was whether
or not he voted for Class X. And he was...the indication was that
if you did not vote for Class X, the money would be used to...to...
defeat you.....and if you voted for Class X, the money would be
used to see that you were reelected. Now, the two of the metropolitan
newspapers has very strong editorials with respect to that conduct.
And I mirror and I echo the feelings that they had. This is an
independent Body, and I resent it...and I particularly resent it when
the Chief Executive of this state suggests that he is going to raise
money in order to interfere with the real determination and delibera-
tion that we make. And that is true whether it's a Republican or
a Democrat. It seems to me that we should be able to judge these
things on the merit; and I strongly resent it. I think it's a
terrible thing; and if it was done by somebody in the commercial
industry, there wouldn't be any question of what we would call it.
It's improper, absolutely improper; and I hope that the Governor,
this Governor or any other Governor or any other Member of government
from here on in, will never say that I'm going to raise money and I'm
going to use it to defeat you or I'm going to use it to support you.
Legislation should be judged on its merits and we should be free and
we shouldn't be fettered. I'm going to support this legislation, and
if I may say one thing further, I said originally that Class X
was a gimmick, Class X was a P.R. program; and I haven't changed my
mind one bit. And I may do it in the future, I'm not too sure that

113.



I have the tendency...I believe it was Martin Luther who nailed
things on the...the manifesto on the door of the Cathedral.
Every time we have a Class X offense, I have the indication that I
will take a newspaper article and I will pin it on the door of the
Governor's Office and say, 'I told you that it wasn't going to work,
Class X is a gimmick, it has no place in the deliberations of this
legislative Body'. And it may live to haunt him. Thank you very
much."

Speaker Bradley: "The Lady from Lake, Mrs. Geo-Karis."

Geo-Karis: "Mr. Speaker, and Ladies and Gentlemen of the House..."

Speaker Bradley: "To explain her vote for one minute."

Geo-Karis: "...To explain my vote for one minute, much as I respect the
Gentleman who just spoke, I also respect Governor Thompson who is
responding to the calls and cries of the citizens of Illinois. In
fact, our present Criminal Code has not done the job to protecting
law abiding citizens. I am in favor of this Bill; I'm supporting
it wholeheartedly because when people realize that it's X felony,
let me tell you that it will strike terror because consecutive sen-
tences can be imposed, number one. Number two, when they're sentenced
to a certain number of years, those are the years they're going to
serve. And it's high time we protected the victims of the crimes
of Illinois and to stop mollycoddling the defendents."

Speaker Bradley: "The Gentleman from Sangamon, Mr. Kane, to explain
his vote for one minute."

Kane: "Mr. Speaker, and Ladies and Gentlemen of the House, the assumptions
behind this Bill are that the problems with the criminal justice
system as it now exists in the State of Illinois lies in the courts
and in the sentencing procedures and not elsewhere. I would say that
the statistics do not bear that out. Last year in 1976 there was
some 1,200,000 crimes reported in the State of Illinois. There were
only 38,000 defendants that ever made it to court. And of those
38,000, 18,000 were convicted, most of them on a plea of guilty. And
I would say that as long as there's that disproportion between the
number of crimes committed, the 1,200,000, and the number of defendants
that make it to court that crime is successful, that crime is something